UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TULSA INDUSTRIAL AUTHORITY, an Oklahoma public trust, and BOKF, NA d/b/a Bank of Oklahoma, )<br>Plaintiffs, )<br>v. )<br>TULSA AIRPORTS IMPROVEMENT TRUST, an Oklahoma public trust, )<br>Defendant. ) | Case No. 13-CV-0179-CVE-TLW |

## OPINION AND ORDER

Now before the Court is Plaintiffs' Combined Motion to Remand and Supporting Brief (Dkt. # 8). Plaintiffs argue that their petition does not allege a claim arising under federal law, and that defendant improperly removed the case to federal court based only a federal defense to a state law claim. Defendant responds that this case involves a substantial issue concerning the interpretation and application of Federal Aviation Administration (FAA) regulations concerning revenue use by airports, and that the Court has federal question jurisdiction over the case.

I.

The Tulsa Airports Improvement Trust (Airport Trust) is a public trust under the laws of Oklahoma, and its mission is to "promote the industrial development and economic growth of the region." Dkt. # 2-1, at 3. In furtherance of this goal, the Airport Trust sought to encourage "new direct nonstop airline service to the major business centers of the east and west coasts." Id. In November 2000, the City of Tulsa (City) agreed to convey real property known as "Air Force Plant No. 3" to the Tulsa Industrial Authority (Industrial Authority). Id. This would enable the Industrial

Authority to mortgage the property to the Bank of Oklahoma (the Bank) in order to obtain a non-recourse loan of $30,000,000, and this money would be loaned by the Industrial Authority to Great Plains Airlines, Inc. (Great Plains). Id. The Airport Trust agreed to enter into a contingent support agreement, in which it would assume the obligation to buy the subject property and the loan to Great Plains in the event that Great Plains defaulted on the loan. Id. The transaction was consummated on December 21, 2000. The City conveyed the property to the Industrial Authority and the Bank loaned $30,000,000 to the Industrial Authority. Id. at 4. The Industrial Authority then loaned the $30,000,000 to Great Plains, and the Industrial Authority assigned the loan without recourse to the Bank. Id. The Bank, the Airport Trust, and the Industrial Authority entered into a support agreement, under which the Industrial Authority could demand that the Airport Trust purchase the property from the Industrial Authority if Great Plains failed to meet its performance obligations or repay the loan. Id. The Industrial Authority states that it irrevocably appointed the Bank as its attorney-in-fact to enforce the support agreement, and that the Bank is the real party in interest as to enforcement of the support agreement. Id.

In 2003, Great Plains failed to meet its performance goals and representatives of Great Plains met with the Bank in attempt to avoid loan default. Id. at 5. Great Plains asked the Bank to refrain from declaring that certain Trigger Events[1] had occurred and to extend the maturity date of the loan. If the Bank formally declared that a Trigger Event had occurred, the Airport Trust would have been obligated to buy Air Force Plant No. 3 from the Industrial Authority for the amount of Great Plain's indebtedness under the loan agreement. The Bank agreed not to declare a Trigger Event, and it also

---

[1] The "Trigger Events" included obligations for Great Plains to disclose information to the Bank and to meet certain performance goals, and Great Plains could also be found in default if it failed to submit timely payments to the Bank. Id. at 30-32, 35.

2

extended the maturity date of the loan to March 21, 2004. Id. The Bank claims that it offered to provide the Airport Trust extended financing to purchase the subject property, and it alleges that it also encouraged the Airport Trust to develop a long range plan to meet its obligations under the support agreement. Id. Great Plains defaulted on the loan and the Bank formally declared that a Trigger Event had occurred on March 21, 2004. Id. at 5-6. On July 14, 2004, the Industrial Authority asked the Airport Trust to comply with the support agreement and purchase the property, but the Airport Trust refused to purchase the property.

On October 1, 2004, the Industrial Authority filed a lawsuit in Tulsa County District Court alleging that the Airport Trust breached the support agreement by refusing to purchase Air Force Plant 3. The Airport Trust asserted numerous affirmative defenses based on the theory that the support agreement was illegal under federal and state law. Dkt. # 8-1, at 5-6. The Industrial Authority moved for summary judgment as to the Airport Trust's affirmative defenses. The Airport Trust responded to the motion and argued, inter alia, that it could not use "airport revenue" to purchase the property without violating federal law, and it claimed that the support agreement was an illegal or unlawful contract. Dkt. # 8-2, at 18-26. The state court granted in part and denied in part the Industrial Authority's motion for summary judgment, but the state court rejected the Industrial Authority's request to strike all of the Airport Trust's affirmative defenses based on federal law. Dkt. # 2-1, at 58-66. In June 2008, the Industrial Authority filed an amended petition adding the City of Tulsa (the City) as a party. Dkt. # 2-1, at 10. The Industrial Authority, the Airport Trust, and the City entered into a settlement agreement, in which the Industrial Authority agreed to dismiss its claims against the Airport Trust and the City in exchange for the City's payment of $7,100,000 to the Bank. Id. In addition, the City agreed that, if it received a qui tam

3

demand challenging the settlement, it would file a declaratory judgment action for a declaration of the validity of the settlement agreement. Id.

The City received a qui tam demand challenging the validity of the settlement agreement. A group of taxpayers claimed that the $7.1 million payment by the City was illegal under Oklahoma law, because the City had no liability in the underlying lawsuit and taxpayers in Tulsa would be prejudiced by the payment of City funds to the Bank. City of Tulsa v. Bank of Oklahoma, 280 P.3d 314, 317 (Okla. 2012). The City filed a declaratory judgment action in Tulsa County District Court seeking a ruling that the settlement agreement was valid. The district court entered judgment in favor of the City, and the taxpayers appealed. The Oklahoma Supreme Court found that the settlement agreement was void, because the Bank failed to file a claim against the City before the statute of limitations had expired and the City could not be held liable to the Bank. Id. at 321. On July 10, 2012, the Bank returned the settlement payment to the City. Dkt. # 2-1, at 11. On March 5, 2013, the Industrial Authority and the Bank filed this case in Tulsa County District Court against the Airport Trust alleging claims of breach of representation and breach of contract. Id. at 11-12. The Airport Trust removed the case to this Court on the ground that plaintiffs had conditioned their right to relief on the resolution of a substantial federal question. Dkt. # 2, at 2. According to the Airport Trust, plaintiffs can obtain relief only if the Court determines that the Airport Trust "could assume the obligation to finance the creation of Great Plains Airline [based on] the interpretation and application of the FAA's Revenue Use Policy." Id.

**II.**

Defendant removed this case to federal court on the basis of federal question jurisdiction, because it claims that plaintiffs' petition raises a substantial federal question concerning "the

4

interpretation and application of federal laws and regulations . . . ." Dkt. # 2, at 2. Plaintiffs respond that the federal issue arises only as a defense to plaintiffs' claims or could arise only in post-judgment proceedings. There is no dispute that the petition asserts solely state law claims of breach of representation and breach of contract.

Under 28 U.S.C. § 1331, federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This statute is ordinarily invoked as a basis for federal subject matter jurisdiction when a plaintiff alleges a claim that arises under federal law, such as 42 U.S.C. § 1983 or federal employment discrimination laws. Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg., 545 U.S. 308 (2005). In Louisville & N.R. Co. v. Mottley, 211 U.S. 149 (1908), the Supreme Court established the general rule that federal question jurisdiction may not be premised on a federal defense to a state law claim. However, a federal court may have jurisdiction to hear a case involving only a state law claim if the claim involves a substantial and disputed question of federal law. Grable, 545 U.S. at 315. "The 'substantial question' branch of federal question jurisdiction is exceedingly narrow--a 'special and small category' of cases." Gilmore v. Weatherford, 694 F.3d 1160, 1171 (10th Cir. 2012) (quoting Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699 (2006)). The Tenth Circuit has stated that to establish federal question jurisdiction under Grable the state law claim "(1) must necessarily raise a federal [issue] that is both (2) actually disputed and (3) substantial; and (4) that may be resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities." Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc., 693 F.3d 1195, 1208 (10th Cir. 2012) (quoting Nicodemus v. Union Pacific Corp., 440 F.3d 1227, 1235 (10th Cir. 2006)).

The federal issue in this case concerns the possible application of statutes and regulations governing the use of airport revenue. Under 49 U.S.C. § 47107(b), revenues generated by a public airport must be expended only on "the capital or operating costs of -- (A) the airport; (B), the local airport system; or (C) other local facilities owned or operated by the airport owner or operator and directly and substantially related to the air transportation of passengers or property." The statute does not define "airport revenue." The FAA has promulgated a revenue use policy and this policy is the most definitive statement of the "scope of airport revenue that is subject to Federal requirements on airport revenue use . . . ." Policy and Procedures Concerning the Use of Airport Revenue, 64 Fed. Reg. 7696 (Feb. 16, 1999). Airport revenue includes fees, rents, or payments received by the airport for the "right to conduct an activity on, or for the use or disposition of, real or personal property or any interest therein owned or controlled by the sponsor and used for an airport-related purpose but not located on the airport . . . ." Id. at 7716. Defendant states that the revenue use policy fails to define "airport-related purpose" and this is "unique and important question[] concerning the scope and significance of federal revenue-use restrictions." Dkt. # 21, at 11.

Defendant argues that plaintiffs' state law claims raise an issue of federal law concerning the FAA's revenue use policy, because defendant denies that it has any non-airport revenue that could be used to satisfy its obligations under the parties' agreement. Dkt. # 21, at 12. Plaintiffs' petition clearly acknowledges that this will be an issue at some point in the case, because plaintiffs allege that "the Airport Trust generates non-airport revenue and can satisfy its obligations under the Support Agreement without violating the FAA's Revenue Use Policy." Dkt. # 2-1, at 9. It is clear that the parties dispute whether the Airport Trust has non-airport revenue, and the second Grable

6

factor is established. However, it is not necessary for the Court to resolve this issue in order for plaintiffs to prevail on their claims, because plaintiffs are not required to prove as an essential element of their claims that defendant actually has sufficient funds to pay a judgment.[2] In order for the Court to exercise federal question jurisdiction over claims arising under state law, the Court must find that there is an issue of federal law that must necessarily be resolved when adjudicating those claims. Gilmore, 694 F.3d at 1173; Devon Energy, 693 F.3d at 1209. Plaintiffs could prevail on their state law claims even if the disputed issue of federal law is not resolved, and the federal law issue will arise only in post-judgment proceedings if plaintiffs establish that defendant is liable for breach of contract or breach of representation. Defendant cannot show that the first Grable factor is satisfied.

The Court also finds that the federal law issue is not substantial for the purpose of federal question jurisdiction. The Supreme Court clarified in Empire that the type of issue that will be considered "substantial" for jurisdictional purposes will generally be a "pure issue of law . . . that could be settled once and for all and thereafter would govern numerous . . . cases." Empire, 547 U.S. at 700-01. The issue raised by defendant is not a pure issue of law and a ruling by this Court, or even by the Tenth Circuit Court of Appeals, would not provide any substantial assistance to other

---

[2] The elements of a breach of contract claim under Oklahoma law are the "1) formation of a contract; 2) a breach of the contract; and 3) actual damages suffered from the breach." Coen v. SemGroup Energy Partners G.P., LLC, 310 P.3d 657, 666 (Okla. Civ. App. 2013). Although the plaintiff must suffer damages to prevail on a breach of contract claim, it is not necessary for the plaintiff to prove that the damages can actually be collected as an essential element of the claim.

federal courts faced with similar issues.[3] Instead, the parties would be asking the Court to consider each possible revenue source from which the Airport Trust could obtain funds to pay a judgment and determine whether each source constitutes airport or non-airport revenue. This would be a fact-intensive analysis and such "fact-bound and situation-specific" issues are not ordinarily deemed "substantial" under Grable. Id. at 701. There is no doubt that resolution of the federal issues would be important to the parties in this case, but that is not the test for determining whether a federal law issue is sufficiently substantial to give rise to federal question jurisdiction. Gunn v. Minton, 133 S. Ct. 1059, 1066 (2013). A ruling on the federal issue raised by defendant would not "settle once and for all" the application or interpretation of the FAA revenue use guidelines, and the issue is not "substantial" for jurisdictional purposes. Empire, 547 U.S. at 700-01. Finally, the Court finds that exercising federal question jurisdiction would disrupt the distribution of labor between state and federal courts, because this case concerns primarily a matter of local importance that should be resolved by state courts, and any issue of federal law is subordinate to the issues of state contract law raised by plaintiffs' claims. The Court finds that neither the third nor the fourth Grable factor supports the exercise of federal question jurisdiction over this case.

The Court finds that it lacks subject matter jurisdiction over this case, and the case should be remanded to Tulsa County District Court. Although there is a disputed issue of federal law, it

---

[3]  Defendant notes that no federal court has ruled on the precise issue of law raised by defendant. Dkt. # 21, at 12. The Court has independently researched this issue and has also found no ruling by a federal court on the revenue use issue raised by defendant. While this could show that there is a lack of judicial precedent on the issue, it also suggests that this issue is not heavily litigated and this tends to undercut the purported "significance" of the issue.

is not an issue that must necessarily be resolved in order for plaintiffs to prevail and the disputed issue of federal law is not "substantial" for the purpose of establishing federal question jurisdiction.

Plaintiffs also seek attorney fees under § 1447(c) due to defendant's "objectively unreasonable" attempt to remove this case to federal court. The standard for awarding fees under 28 U.S.C. § 1447(c) turns on the "reasonableness" of defendant's decision to file a notice of removal and, when a defendant has an objectively reasonable basis to seek removal, attorney fees should not be awarded. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Plaintiffs argue that the law is clearly established that removal is not permitted based only the presence of an issue of federal law raised in a defense. However, plaintiffs' petition clearly shows that they were aware of this federal law issue when the case was filed, and there are circumstances under which an issue of federal law, even in the absence of a federal claim, could be sufficiently substantial to give rise to federal question jurisdiction. See Grable, 545 U.S. 308; Gilmore, 694 F.3d 1160. The Court has found that the application or interpretation of the FAA's revenue use policy is not a substantial or disputed issue of federal law that would give rise to federal question jurisdiction under the circumstances. However, there is clearly an issue of federal law that is likely to arise if plaintiffs eventually prevail on their claims, and defendant's attempted removal of the case was not objectively unreasonable. Thus, the Court declines to award attorney fees to plaintiff under § 1447(c).

**IT IS THEREFORE ORDERED** that Plaintiffs' Combined Motion to Remand and Supporting Brief (Dkt. # 8) is **granted**.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to remand this case to the Tulsa County District Court.

**DATED** this 7th day of November, 2013.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE